# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SHARON ROCHELLE BIRKLEY,**

     **Plaintiff,**

    **v.**                                 **Case No.   25-CV-793**

**TARGET-557-DC**
**TARGET DISTRIBUTION CENTER,**

     **Defendant.**

---

## DECISION AND ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

---

Sharon Rochelle Birkley, who is representing herself, sues her former employer, Target Distribution Center, alleging discrimination and failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; discrimination based on race, color, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and hostile work environment and retaliation in violation of Title VII. Target moves to dismiss Birkley's ADA claims, her hostile work environment claim, and her color discrimination claim with prejudice for failure to state a claim upon which relief can be granted and for failure to exhaust her administrative remedies. *See* Fed. R. Civ. P. 12(b)(6). (Docket # 22.) For the reasons explained below, defendant's partial motion to dismiss is granted.

### PLAINTIFF'S MOTION TO AMEND COMPLAINT

As an initial matter, while the operative complaint is currently Birkley's second amended complaint (Docket # 11), Birkley seeks leave to file a third amended complaint (Docket # 17). Birkley asserts, however, that this third version of the complaint merely

corrects a clerical error. (*Id.* at 1.) Target does not oppose Birkley's motion (Docket # 27) and states that while its motion to dismiss is directed at the second amended complaint because it remains the operative complaint, as the proposed third amended complaint only minimally differs from the second amended complaint, "the response to either filing would be substantively identical" (Docket # 22 at 1).

Because Target does not oppose Birkley's filing of a third amended complaint, her motion is granted. (Docket # 17.) Birkley has filed motions for leave to extend time to serve both the second amended complaint (Docket # 30) and the third amended complaint (Docket # 31). Both these motions are unnecessary and are therefore denied. The second amended complaint was already served electronically on July 11, 2025, prompting Target to file the instant motion to dismiss; and because leave to file a third amended complaint is now granted, the clerk of court will file the proposed third amended complaint on the docket and this will constitute service on Target. *See* Fed. R. Civ. P. 5(b)(2)(E).

Further, generally speaking, when an amended complaint is filed, "the prior pleading is withdrawn and the amended pleading is controlling." *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008). Thus, courts "routinely deny motions to dismiss as moot after an amended complaint is filed, unless a defendant wishes to apply that same motion to the amended complaint because the amended complaint has not remedied the previous deficiencies." *Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2020 WL 1660044, at *1 (N.D. Ind. Mar. 31, 2020) (internal quotation and citation omitted).

In this case, Target indicates that it wishes to apply its same motion to the third amended complaint, noting that its motion would be "identical" whether directed at the

second or third amended complaint. For this reason, I will consider the parties' briefing as applying to the now controlling third amended complaint.

## BACKGROUND

Birkley alleges that she was employed at the Target Distribution Center in Oconomowoc, Wisconsin as a Loader and Outbound employee from November 2021 through December 2022. (Third Am. Compl. at 1, Docket # 17-1.) She alleges that she is a member of protected classes based on her race (Black), sex (female), and as an individual with a disability. (*Id.* at 2.) Birkley asserts six causes of action against Target. Her first claim is for "disparate treatment." (*Id.*) Birkley alleges that she was subjected to disparate treatment regarding training and promotion opportunities. (*Id.* at 2–3.) She alleges that she was required to perform at a higher level than employees outside her protected class and yet was denied training opportunities and promotions that these individuals received. (*Id.*) Birkley asserts that this treatment led to unequal access to career advancement opportunities. (*Id.*) Birkley's second claim is for "harassment." (*Id.* at 4.) She alleges that she was harassed for taking reasonable safety precautions and unfairly blamed for injuries, despite following or attempting to follow safety rules. (*Id.*) Birkley asserts that Target inconsistently applied its safety policies and she was written up for actions that aligned with safety rules. (*Id.*) She alleges that she was pressured to act unprofessionally to gain favor. (*Id.*) In her third claim, Birkley alleges "hostile work environment." (*Id.* at 5.) She states that the incidents she experienced including discriminatory treatment, harassment, and retaliatory actions collectively created an abusive, hostile, and intolerable work environment. (*Id.*)

Birkley's fourth claim alleges retaliation. (*Id.* at 6.) She states that she faced several adverse employment actions, including discipline and eventual termination, due to her complaints to management regarding discrimination, requesting a reasonable accommodation, and filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.*) In her fifth claim, Birkley alleges that Target failed to accommodate her disability, specifically, her leg cramp and shoulder injury. (*Id.* at 8.) And finally, Birkley alleges in her sixth claim that she was discriminated against based on her color, asserting that her experience demonstrates that even within the same race and sex, discrimination based on color can occur. (*Id.* at 9–10.)

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

As an initial matter, Target does not seek to dismiss Birkley's Title VII claims of disparate treatment and retaliation. (Docket # 22 at 2 n.4.) Rather, Target seeks dismissal of Birkley's claims for violations of the ADA, hostile work environment/harassment, and color discrimination. (*Id.* at 5.) Target argues that these claims were not administratively exhausted before the EEOC and that the pleading lacks sufficient support to show they are plausible under Fed. R. Civ. P. 12(b)(6). (*Id.*) I will address each claim in turn.

*1.     Claims Under the ADA*

Whether Birkley intends to bring a claim or claims under the ADA is not entirely clear from her pleading. While her third amended complaint contains a section entitled "Disability (Failure to Accommodate)," she states within this section that she is "not

bringing a new, separate claim of Disability Discrimination or Failure to Accommodate."
(Docket # 17-1 at 8.) Rather, she states that she is "highlighting how Defendant's actions
regarding my injuries contributed to the hostile work environment and were integral to their
discriminatory and retaliatory practices." (*Id.*) However, in the section entitled
"Introduction," Birkely states that this lawsuit "alleges discrimination, harassment, and
retaliation in violation of Title VII of the Civil Rights Act of 1964 . . . and claims related to
my injury-related disability." (*Id.* at 1.)

In response to Target's motion pointing out this lack of clarity (Docket # 22 at 8),
Birkley does not confirm that she is indeed pursuing claims under the ADA; rather, she
states that her claims of "disability, failure to accommodate, and color discrimination are
not new claims but rather are integral to the core allegations," which she states is disparate
treatment, harassment, and retaliation based on her race and sex. (Docket # 25 at 1–2.)

A *pro se* litigant's pleadings are to be liberally construed and "a *pro se* complaint,
however inartfully pleaded, must be held to less stringent standards than formal pleadings
drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation and
citation omitted). Thus, I will construe Birkley's complaint as alleging discrimination and
failure to accommodate under the ADA.

### 1.1    Failure to Exhaust Administrative Remedies

Target argues Birkley failed to administratively exhaust her ADA claims by failing to
raise allegations about them in her discrimination charge with the EEOC. (Docket # 22 at
8–9.) An ADA plaintiff "must file a charge with the EEOC before bringing a court action
against an employer." *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018). "[A]
plaintiff is barred from raising a claim in the district court that had not been raised in his or

her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999).

Birkley's EEOC charge, which she appends to her complaint, makes no mention of discrimination based on disability, nor does it assert a failure to accommodate. Rather, she states that she believes she was discriminated against because of her race (Black) and sex (female) in violation of Title VII. (Docket # 17-2 at 1.)

Birkley argues that even though she did not specifically mention these disability claims in her EEOC complaint, a "reasonable EEOC investigation should have encompassed these issues, as they arise from the same core facts and events as my discrimination and retaliation claims." (Docket # 25 at 2.)

But Birkley's claims of discrimination based on race and sex and her claims of discrimination and failure to accommodate based on disability implicate entirely different facts and legal theories. Aggrieved employees must first seek relief from the EEOC to allow the agency and the employer an opportunity to attempt conciliation without resort to the courts. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). This goal, however, "would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Id.* Thus, to be "reasonably related" the "EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original). Birkley's claims of discrimination based on race and sex do not describe the same conduct as discrimination and failure to accommodate based on disability. For these

reasons, I find that Birkley has failed to exhaust her administrative remedies as to her ADA claims.

### 1.2    Failure to State a Claim

Alternatively, Target argues that even if Birkley's ADA claims were exhausted, her third amended complaint fails to state a claim for either disability discrimination or failure to accommodate. To state a claim for disability discrimination under the ADA, a plaintiff must allege that (1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and (3) she suffered from an adverse employment action because of her disability. *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838–39 (7th Cir. 2012). A plaintiff claiming failure to reasonably accommodate must show that: (1) she is a qualified individual with a disability, (2) the employer was aware of her disability, and (3) the employer failed to reasonably accommodate the disability. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015) (quotation and citation omitted).

Under the ADA, a "disability" means a physical or mental impairment that substantially limits one or more major life activities of the individual. 42 U.S.C. § 12102(1). While Birkley alleges that she sustained various injuries while at work, including injuries to her knee, shoulder, and eye, as well as a leg cramp (Docket # 17-1 at 8), she fails to allege what major life activities were substantially limited by these injuries. *See Hancock v. Potter*, 531 F.3d 474, 479 (7th Cir. 2008) (finding an employee who "merely had a work-related back injury that temporarily limited her ability to perform certain job duties and short-term absences" failed to demonstrate that any of her major life activities were affected by her injury). Further, as to her eye injury and her leg injury, Birkley alleges that Target *did*

accommodate her. (Docket # 17-1 at 8.) For these reasons, even if Birkley had exhausted her ADA claims, she fails to allege facts plausibly suggesting she is disabled under the ADA.

      *2.*       *Hostile Work Environment/Harassment Claims*

Birkley's third amended complaint contains two separate sections entitled "harassment" and "hostile work environment." (Docket # 17-1 at 4–5.) In the "harassment" section, Birkley alleges that managers "harassed" her for taking reasonable safety precautions and unfairly blamed her for her injuries. (*Id.* at 4.) She alleges she felt pressured to act unprofessionally or to engage in unproductive behaviors to potentially gain favor. (*Id.*) Under the "hostile work environment" section, Birkely alleges that she suffered from verbal and physical abuse from leadership and co-workers. (*Id.* at 5.)

      2.1    Failure to Exhaust Administrative Remedies

Target argues that there is no separate cause of action for "harassment"; rather, "harassment" simply describes the conduct that defines the phrase "hostile work environment." (Docket # 22 at 12.) Further, Target argues that Birkley failed to administratively exhaust her hostile work environment claim. (*Id.* at 12–14.) As an initial matter, I agree that "harassment" is not an independent cause of action but a word that informs the hostile work environment analysis. *See Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015) ("In the context of Title VII cases, the word 'harassment' frequently describes the conduct that defines the phrase 'hostile work environment.'"). As such, I will consider both claims together.

Once again, Birkley's EEOC charge states as follows:

I began employment with the above Respondent on October 5, 2021, as an Outbound Warehouse Associate. Throughout my employment I have

requested training. My requests have been denied which limits my experience and disqualifies me for promotions. I have been disciplined regarding my work performance, and recently I received a write up on November 19, 2022. I complained to upper management with no resolve. On December 20, 2022, I was discharged.

I believe that the Respondent discriminated against me because of my race (Black) and sex (female), in violation of Title VII of the Civil Rights Of 1964, as amended.

(Docket # 17-2 at 1.) As with Birkley's ADA claim above, her EEOC charge makes no mention of a hostile work environment claim. Birkley argues that despite not explicitly checking hostile work environment on her EEOC form, a "hostile work environment is a direct consequence of the discriminatory incidents and abusive power dynamic that formed the basis of my initial complaint." (Docket # 25 at 2.) However, "[w]hen an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek*, 31 F.3d at 503. The Seventh Circuit has noted, however, that "[o]rdinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination." *Id.* Rather, as stated above, the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals. *Id.* at 501.

In her complaint, Birkley alleges that Target inconsistently applied policies, held contradictory safety expectations, and unfairly blamed her for her own injuries, creating a hostile work environment. (Docket # 17-1 at 5.) She further alleges that she experienced verbal and physical abuse from leadership and co-workers. (*Id.*) Birkley's EEOC charge, however, alleges discrimination based on race and sex. It makes no mention of experiencing verbal and/or physical abuse from leadership and co-workers, nor does it assert that she

experienced such actions due to her sex and race. There are no facts whatsoever in Birkley's complaint to alert the EEOC that she is pursuing a hostile work environment claim due to her sex or race. And a claim for sex or race-based harassment does not automatically flow from a sex or race discrimination claim. For these reasons, Birkley has failed to exhaust her administrative remedies as to her hostile work environment/harassment claims.

### 2.2 Failure to State a Claim

Once again, Target alternatively argues that Birkley's complaint fails to state a hostile work environment claim. (Docket # 22 at 14–16.) A hostile work environment claim contains four elements: "(1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by Title VII—here, race; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability." *Smith v. Illinois Dep't of Transportation*, 936 F.3d 554, 560 (7th Cir. 2019).

Birkley's complaint fails to allege facts that plausibly establish that she was subjected to unwelcome harassment, or that such alleged harassment was based on her membership in a protected class. Rather, she makes conclusory statements that various "incidents" occurred which she described, amongst other words, as "bullying," "abusive," "gaslighting," "demeaning," and "vindictive." (Docket # 17-1 at 5.) But beyond conclusory statements, Birkley's complaint fails to allege facts that plausibly demonstrate that Birkley was subject to unwelcome harassment or that any alleged harassment was based on her race or sex. For these reasons, even if Birkley had exhausted her hostile work environment claim, she fails to allege facts plausibly suggesting a viable claim under Title VII.

3.    *Color Discrimination Claim*

Birkely's complaint contains a section entitled "color discrimination"; however, she again states that she is "not introducing a new, separate claim of color discrimination. This is an elaboration of how discrimination manifested within my existing claims of race (Black) and sex (female) and retaliation." (Docket # 17-1 at 9.) Despite the lack of clarity of whether she intends to pursue a claim of color discrimination, I will construe Birkley's complaint as though she is alleging such a claim.

3.1    Failure to Exhaust Administrative Remedies

Target argues that Birkley failed to exhaust her claim for color discrimination. Birkley asserts that even though her complaint broadly asserts race discrimination, race implicitly covers color "if my treatment was based on my specific skin tone." (*Id.*) Title VII forbids discrimination on the basis of "color" as well as on the basis of "race." *Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008). A charge of Title VII color discrimination alleges that an employee experienced discrimination on the basis of their skin tone. *Hickman v. Target Corp.*, No. 20 C 6987, 2021 WL 5712185, at *3 (N.D. Ill. Dec. 2, 2021). "Color discrimination is distinct from race discrimination because it focuses on discrimination based on the lightness or darkness of a person's skin, not simply membership in a particular[] racial group." *Id.*

As stated above, Birkley's EEOC charge alleges she was discriminated against based on her race (Black) and sex (female). (Docket # 17-2 at 1.) There is no indication that her particular skin tone had anything to do with the allegations of discrimination. Because race and color discrimination are distinct theories, multiple courts in this circuit have found that "allegations of race discrimination do not automatically encompass color discrimination

claims, meaning a color discrimination claim does not grow out of a race discrimination charge for exhaustion purposes." *Nickerson v. US Airways, Inc.*, No. 15 C 2970, 2016 WL 3563807, at *4 (N.D. Ill. July 1, 2016) (collecting cases). Without any facts asserting that Birkley was discriminated against based on her color, her broad citation to race discrimination does not automatically exhaust a claim for color discrimination. Thus, Birkley has failed to exhaust this claim.

### 3.2    Failure to State a Claim

Even if Birkley had exhausted this claim, however, her complaint fails to state a claim. While Birkley acknowledges that color discrimination can exist, stating that "even within the same race . . . discrimination based on color can occur" (Docket # 17-1 at 10), she fails to allege any facts indicating that she, herself, was discriminated against based on her color. Rather, it appears she is alleging color discrimination as an alternative to race discrimination, just in case her "treatment was based on my specific skin tone." (*Id.* at 9.) While she states that her "experience demonstrates" that even within the same race discrimination based on color can occur, Birkley alleges no facts indicating that she was treated differently based on her skin tone, or even what her specific skin tone is. (*Id.* at 9– 10.) Thus, Birkley's complaint fails to state a claim for color discrimination.

### 4.    *Dismissal of Claims With Prejudice*

Finally, Target argues Birkley's ADA, hostile work environment, and color discrimination claims should be dismissed with prejudice. Generally speaking, the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile her suit when and if she exhausts all of his administrative remedies or drops the unexhausted claims. *Greene v. Meese*, 875 F.2d 639,

643 (7th Cir. 1989). In this case, however, Target argues that any charge with the EEOC is now time-barred and thus dismissal should be with prejudice. (Docket # 22 at 10 n.11.) I agree. In Wisconsin, a plaintiff has 300 days from the alleged discriminatory act to file a complaint with the EEOC or the state Equal Rights Division. *Calvin v. Sub-Zero Freezer, Co.*, 697 F. App'x 874, 875 (7th Cir. 2017). "A plaintiff's failure to file a timely administrative complaint bars his suit." *Id.* Birkley asserts that she was terminated on December 20, 2022. (Docket # 17-2 at 1.) Thus, over two and a half years have passed since Birkley's termination. Any attempt to exhaust her claims is now time-barred. As such, dismissal with prejudice is proper in this case.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File a Third Amended Complaint (Docket # 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Partial Motion to Dismiss Plaintiff's Third Amended Complaint (Docket # 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Extension of Time to Serve (Docket # 30 and Docket # 31) are **DENIED**.

Dated at Milwaukee, Wisconsin this 16th day of September, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge